IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA HOLLEY, personal representative
of the estate of Dustin Van Jelgerhuis, deceased,

        Plaintiff,

v.                                                                        CIV 12-0320 KBM/WDS

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY, a
North Dakota non-profit corporation d/b/a
Grants Good Samaritan Center,

        Defendant.

# MEMORANDUM OPINION & ORDER

      Defendant removed this wrongful death action on the basis of diversity, and moved to dismiss any consortium claim raised by the original complaint. *See Docs. 1, 1-2* ("Complaint"), *6, 7.* In response, Plaintiff moved to amend, tendered a proposed Amended Complaint, and cited the standard for granting amendments when leave of court is required. *See Docs. 13, 14, 14-1* ("Amended Complaint"); *see also* Fed. R. Civ. P. 15(a)(2). In later briefing, Plaintiff takes the position that leave of Court is not necessary, because she is entitled to amend as a "matter of course" under Fed. R. Civ. P. 15(a)(1)(B). The parties consented to have me act as presiding judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See Docs. 15, 16.*

      In both the original and amended complaints, Plaintiff alleges that Decedent was a quadriplegic for twenty-three years, and his voluntary movements were limited to coughing and blinking. *See Complaint* ¶ 4; *Amended Complaint,* ¶ 10. It appears that Decedent spent that entire twenty-three year period in its assisted living facility. *See, e.g., Doc. 19* at 3-4 (noting that original complaint alleges negligence on Decedent's "last day of his 23 years" at the facility);

*Doc. 20* at 3 (arguing "pleadings establish that for 23 years" Decedent did not live with family members); *Complaint,* ¶ 3 ("At all relevant times, the decedent was a resident" at the facility").

Plaintiff Andrea Holley is Decedent's sister and duly appointed representative of her brother's estate. *See Complaint* ¶ 1; *Amended Complaint,* ¶ 7. She alleges that personnel at the facility negligently failed to properly secure the decedent such that he fell from his bed, struck his head, landed on the floor in a position where he was unable to breathe, and died of positional asphyxiation. *See Complaint* ¶¶ 5-7; *Amended Complaint,* ¶¶ 11-13. Despite Plaintiff Holley's protestations that original Complaint did not specify a consortium claim so there is nothing to dismiss, *see Doc. 13* at 2, paragraph 9 of the original Complaint seeks recovery of losses suffered by Decedent's "survivors," including "loss of companionship." *See Complaint* ¶ 9. That sort of injury traditionally lies at the heart of a consortium claim. *See, e.g., Fernandez v. Walgreen Hastings Co.,* 126 N.M. 263, 273 (1998).

Defendant moved to dismiss any consortium claims on the grounds that Plaintiff Holley did not share a household with the decedent and therefore fails to meet the "key element" for such a consortium claim under New Mexico law. *Doc. 20* at 2; *see also Doc. 7* at 3-4 (citing *Wachocki v. Bernallillo Co. Sheriff's Dept.,* 150 N.M.650 (2011) and *Fitzjerrell v. City of Gallup,* 134 N.M. 492 (Ct. App. 2003)). Plaintiff Holley disputes that residing together is a necessary element for a loss of consortium claim. She further clarifies that she is not pursuing a loss of consortium claim for herself but does seek to add Janice Fay Milchert, Decedent's mother, so that she may pursue her own loss of consortium claim. *See* Amended Complaint at ¶ 2. Indeed, the Amended Complaint clearly separates the recovery Plaintiff Holley seeks as representative under the New Mexico wrongful death statute and the recovery Plaintiff Milchert seeks for her own loss of consortium. *See id.,* ¶¶ 16, 18, 19.

Plaintiff's belated position that she is entitled to amend the complaint as a matter of right is correct as a matter of timing. The dates of the state filings control for the purposes of applying the timing rules under Rule 15. *See, e.g., Van Leeuwen v. SIB Mortg. Corp.,* No. 2:10-CV-730-TS, 2011 WL 13798, at * D. Utah Jan. 4, 2011) ("Turning again to Rule 81 of the Federal Rules, it states that '[a]fter removal, repleading is unnecessary unless the court orders it.' Thus, the Court is to treat all pleadings filed in state court as if they were filed in federal court. While this issue has not been addressed in this circuit, other courts facing similar issues have likewise held that the relevant date for purposes of amendment under Rule 15 is the filing of the original complaint in state court.") (footnotes omitted).

Plaintiff filed her state complaint on February 27, 2012. *See, e.g., Doc. 8-1* at 1. Since this is a pleading "to which a responsive pleading is required," Plaintiff had twenty-one days from the earlier of two events in which to file an amended pleading as a matter of right – after Defendant's service of either a responsive pleading or a motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1). Defendant was served at some unspecified point and did not file an answer in state court. Instead, it removed the action and a few days later filed its motion to dismiss here on April 5, 2012. Plaintiff's first tender of an amended complaint on April 19, 2012 fell within twenty-one days of both removal and the motion, so she could have simply filed it rather than seeking leave to do so. Nowhere does counsel suggest (on the docket or in briefing) that the caption and docketing of the motion was made erroneously.

Plaintiff, however, seeks permission from the Court to file an amended complaint. At this early stage of the litigation, permissive amendment of the pleadings should be freely given "when justice so requires." *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.1993) ("Refusing leave to amend is generally only justified upon a showing of undue

delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc."). Defendant counters that justice would not be served by allowing the amendment on the basis that Ms. Milchert also did not share a household with her adult son. Defendant maintains that addition of the loss of consortium claim would therefore be a futile exercise serving no useful purpose. I respectfully disagree.

The test for a loss of consortium claim under New Mexico law is two-pronged. The first prong requires a showing of a sufficiently close relationship, and the second prong requires a "duty of care." *Wachocki,* 150 N.M. at 651-52 (defendant "owes a duty of care to the claimant where it is foreseeable that the harm inflicted upon the injured party would damage the relationship between the injured party and the claimant."). The relevant allegations set forth in the proposed amended complaint are as follows:

> Due to the extent of the decedent's disability, it was necessary for the decedent to reside at an assisted care facility. . . .  Plaintiff Janice Fay Milchert spent substantial time with decedent on a daily basis. Plaintiff Milchert communicated extensively with decedent on an ongoing basis, and actively participated in the decedent's care. During this [23 year] time period, Plaintiff Milchert enjoyed an intimate, interdependent, and intertwined relationship with the decedent.

*Doc. 14-1* at ¶18.

As to the first prong of the test requiring a sufficiently close relationship, "mutual dependence is the key factor." *Lozoya v. Sanchez,* 133 N.M. 579 (2003). The Court of Appeals has explained that

> *Lozoya's* "mutual dependence" factors includes, in our view, emotional, physical, and financial support and dependence. *Lozoya* makes clear that a relationship that creates a compensable interest is one that is intimate, protective, interdependent, and intertwined in functional (the way the people in the relationship meet day-to-day situations together), financially interdependent, and temporal ways (spending time together at least to the extent of living together in the same household). . . . When added to the elements of the cause of action enunciated in *Fernandez,* these

> factors form a cogent picture of the legal requirements that are necessary to maintain a claim for loss of consortium.  It is clear that the purpose of this cause of action is not to compensate claimants for grief they suffer as a result of their own upset, but to compensate an injury to a relationship they shared with the injured or deceased person.

*Fitzjerrell,* 134 N.M. at 496-97.  Defendant argues that because they did not live together, the relationship of Decedent's mother and her son necessarily fail to meet the "mutual dependence" requirement.  But I have found no case expressly holding that a "claimant must at a minimum have shared a household with the decedent."  *Doc. 20* at 2.  Rather it appears to be one of many of the factors to consider.

For instance, in evaluating the closeness of the plaintiff's relationship with his adult brother with whom he resided, the *Wachocki* court reiterated that a court must evaluate

> the duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and . . . whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related to each other in attending to life's mundane requirements.

\*   \*   \*

> A relationship-specific test would presumably spawn many iterations—the factors would have to be tailored to siblings in this instance, then to many other types of relationships in cases to come. With the proper analysis so reliant upon the nature of the relationship, we fear that lower courts would be left with little clear guidance when faced with a loss-of-consortium claim.  Though we decline to inject sibling-specific factors into the analysis of whether the claimant and injured parties shared a sufficiently close relationship, ***we hold that the analysis should be streamlined to accommodate different types of relationships***.  In *Lozoya*, we held that the degree of mutual dependence, as well as a host of other factors, such as duration of the relationship, emotional reliance, and sharing of a common residence, bear upon whether the claimant and injured party shared a sufficiently close relationship.  We acknowledge that these factors may be helpful in the context of some relationships, especially spousal-type relationships; however, ***we strive for a uniform analysis applicable to all relationships.  With that goal in mind, we conclude that mutual dependence is the key element.***

*Wachocki*, 150 N.M. 650, ___, 265 P.3d 701, 703-04 (emphasis added and citations omitted).

Even if they had been able to share a common residence, as a quadriplegic Decedent simply was not physically in a position to mutually assist his mother in many of the ways the Court is to consider – for instance, financial contributions.  Yet I am loathe to find that his physical disability *per se* precludes a finding of "mutual dependence," especially given other factors – the duration of the relationship, emotional reliance and participation in care – which may be especially weighty under circumstances alleged in the amended complaint.

> In *Fernandez,* our Supreme Court determined that a sufficient level of mutual dependence is foreseeable in a relationship between a toddler and her primary care giver.  Clearly, a small child depends almost entirely on her primary care giver to provide for her needs.  Similarly, it can be expected that one who assumes such a role in the life of a small child is largely consumed by the responsibility and that the obligation to the child becomes a defining component in one's life.

*Wachocki v. Bernalillo Co.*, 147 N.M. 720, 735 (Ct. App. 2009).  Decedent's disability allegedly ***required*** his placement at an assisted living facility with round-the-clock care given due to her son's significant limitations.  But Ms. Milchert does allege that she spent substantial time at the facility with decedent on a daily basis as well as extensive, ongoing communications with her son, and that she actively participated in her son's care, much like the *Fernandez* plaintiff grandmother.  Although they are minimal, I find the allegations sufficient to survive a motion to dismiss and will allow discovery to proceed as to whether Ms. Milchert's relationship with her son was sufficiently mutually dependant to allow recovery for loss of consortium damages.

As to the second "duty of care" prong for stating a viable claim, discovery should also be permitted as to whether Ms. Milchert was a foreseeable plaintiff to which defendant owed a duty of care.  I am aware of past decisions that have held that New Mexico would not recognize a claim for loss of consortium by the parent of an adult decedent on the grounds that they simply

were not "foreseeable plaintiffs." *See Hoskie v. United States,* 666 F.2d 1353, 1359 (10th Cir. 1981); *Solon v. WEK Drilling Co., Inc.,* 113 N.M. 566, 829 P.2d 645, 650 (1992); and *Wilson v. Galt,* 100 N.M. 227, 235, 668 P.2d 1104, 1112 (N.M. App. 1983).  Yet these decisions were issued at a time when New Mexico courts rejected **_any_** claim for loss of consortium.  *See Lozoya*, 133 N.M. at 584 (2003) ("New Mexico did not recognize actions for loss of consortium, spousal or otherwise, until 1994).  And even more specifically, these cases were decided before the 2003 decision in *Fitzjerrell* which specifically held that in an action for negligence, the parents and siblings of an adult decedent "should be allowed to recover for loss of consortium if the evidence shows that their relationships with Decedent was sufficiently close financially, socially, or both, and if it was foreseeable that the injury to Decedent would harm the relationships." *Fitzjerrell*, 134 N.M. at 497..[1]  In that case, the New Mexico Court of Appeals explained that

> the district court found a legal bar to entertaining the claims. ***We now see the question is one of factually establishing the nature of the relationship between claimant(s) and the injured party.*** *See Lozoya,* 2003-NMSC-009, ¶ 31, 133 N.M. 579, 66 P.3d 948;  *see also Fernandez,* 1998-NMSC-039, ¶ 32, 126 N.M. 263, 968 P.2d 774. Here, the essential elements of a claim for loss of consortium can fairly be inferred from the allegations in the complaint to a sufficient extent to defeat a dismissal for failure to state a claim. We therefore reverse and remand this matter to allow Plaintiffs to develop such facts as they can to establish the sufficiency of their claims.

*Id*. (emphasis added).

Wherefore,

---

[1] The Court is mindful of two decisions by the Honorable Martha Vázquez referring to the 1992 *Solon* decision and its holding that parents of adult children do not rise to the level of "foreseeable plaintiffs."  *See Murphy v. Bitsoih,* 320 F. Supp.2d 1174, 1186-87 (D.N.M. 2004) and *Cheromiah v. United States,* 55 F. Supp. 2d 1295, 1309 (D.N.M. 1999).  However, the *Cheromiah* ruling preceded the New Mexico Court of Appeals' *Fitzjerrell* decision.  It is unlikely Judge Vázquez was even aware of that then-recent opinion when she issued the 2004 *Murphy* opinion – she neither mentioned *Fitzjerrell* nor addressed its impact.

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss *(Doc. 6)* is **granted** insofar as the original complaint could be read to implicate a loss of consortium claim brought by Plaintiff Holley.

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend *(Doc. 14)* is **granted.** Plaintiff shall file the amended complaint within ten days of this order.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE