IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA HOLLEY, personal representative
of the Estate of Dustin Van Jelgerhuis,
deceased; JANICE FAY MELCHERT,

       Plaintiffs,

v.                                     CIV 12-0320 KBM/WDS

THE EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY, a North Dakota
non-profit corporation, d/b/a GRANTS GOOD
SAMARITAN CENTER,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment on Breach of Duty and Causation *(Doc. 83)*, filed November 29, 2012. Pursuant to 28 U.S.C. § 636 and FED. R. CIV. P. 73, the parties have consented to me serving as the presiding judge and conducting all proceedings, including trial.  *See Docs. 10, 15, 16.*  Having reviewed the Defendant's Motion and the relevant law, I find the Motion is well-taken and that Defendant is entitled to summary judgment on both of the asserted grounds.

I.    **BACKGROUND**

This lawsuit arises out of the October 9, 2011 death of Dustin Van Jelgerhuis ("Dustin"), brother of Plaintiff Holley and son of Plaintiff Melchert.  The following facts are undisputed.

A hang gliding accident rendered Dustin a quadriplegic for more than twenty years.  *See Doc. 33* at ¶ 10.  He had been a resident at Defendant Grants Good Samaritan Center for the majority of that time.  *Doc. 84* at 3, ¶ 4.  *See also Doc. 97-1* (Plaintiffs' Supplement noting disputes only as to Defendant's Facts Nos. 20, 21 & 24; therefore, all other of Defendant's Facts, including Fact No. 4 admitted).  Dustin was "incapable of any voluntary movement, apart from coughing and blinking."  *Doc. 33* at ¶ 10; *see also Doc. 84* at 3, ¶ 6; *Doc. 97-1* (Fact No. 6 admitted).

Prior to July 24, 2002, Defendant used bed side rails on Dustin' bed.  *See Doc. 84* at 3, ¶¶ 7-9; *Doc. 97-1* (Fact Nos. 7-9 admitted).  At this point, Defendant became a "restraint-free" facility and ceased using restraints, including bed side rails, in its facility.  *See Doc. 84* at 3, ¶ 8; *Doc. 97-1* (Fact No. 8 admitted).  Defendant accordingly removed the side rails from Dustin' bed, lowered his bed to the floor and provided bilateral soft mats adjacent to the bed to reduce potential injury to Dustin in the event that he rolled or fell out of bed due to some occasional involuntary movements.  *See Doc. 84* at 3, ¶ 9; *Doc. 97-1* (Fact Nos. 6 & 9 admitted).  Thereafter, Dustin rolled from his bed onto his floor mat approximately six times from 2003-2007.  *See Doc. 84* at 3, ¶ 10; *Doc. 97-1* (Fact No. 10 admitted).  During this time frame, Defendant conducted care plans for Dustin every 90 days, including falls assessment.  *See Doc. 84* at 4, ¶ 11; *Doc. 97-1* (Fact No. 11 admitted).

On October 9, 2011, after approximately four and a half years without experiencing any fall, Dustin was found face-down on the mat at the side of his bed and was later pronounced dead.  *See Doc. 84* at 4, ¶ 15; *Doc. 97-1* (Fact No. 15 admitted).

His death certificate listed positional asphyxia as a cause of death.  *See Doc. 84* at 5, ¶ 17; *Doc. 97-1* (Fact No. 17 admitted).

There is no dispute that Defendant's employee positioned Dustin in the same manner on the night of October 9, 2011 as he had always been positioned.  *See Doc. 84* at 4, ¶ 13; *Doc. 97-1* (Fact No. 13 admitted).  There was nothing unusual or different about Dustin' positioning on October 9, 2011.  *See id.*  Moreover, Plaintiffs' standard-of-care expert has no criticisms regarding the positioning of Dustin on October 9, 2011 and has no reason to believe he was not properly positioned in his bed that night.  *See  Doc. 84* at 6, ¶ 23; *Doc. 97-1* (Fact No. 23 admitted).

Plaintiffs' Amended Complaint asserts five separate acts of negligence by Defendant:  (1) failure to ensure that Dustin was properly positioned and secured in his bed on the evening of October 9, 2011; (2) negligent hiring and training of employees; (3) failure to follow proper precautions for patients at high risk for falls; (4) failure to conduct proper safety checks on patients; and (5) failure to provide and implement a proper care plan.  *See Doc. 33* at 3.  In support of their claims, Plaintiffs offer Virginia Shoemaker Verity, R.N. as their sole expert regarding the standard of care and any breach thereof.  *See Doc. 84* at 5, ¶18; *Doc. 84-3* at 1-2; *Doc. 97-1* (Fact No. 18 admitted).

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way.  *See Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient.  *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED. R. CIV. P. 56(c)(1)(A) (emphasis added).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(B).  *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).  Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2).

The court need only consider the materials cited by the parties.  FED. R. CIV. P. 56(c)(3).  In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment.  FED. R. CIV. P. 56(e).

III.    **ANALYSIS**

In this medical malpractice action, Plaintiffs must show that "(1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Blauwkamp v. Univ. of N.M. Hosp.*, 836 P.2d 1249, 1252 (N.M. Ct. App. 1992).  Proof of these elements generally requires expert testimony, particularly as to the elements of breach of the standard of care and causation.  *See id.* at 1253-54.

Plaintiffs have identified Virginia Shoemaker Verity, R.N. as their expert regarding the applicable standard of care and the Defendant's alleged deviation therefrom.  *See Doc. 46* at 2.  A different witness, Pathologist Kurt B. Nolte, M.D. of the New Mexico Office of the Medical Investigator, is designated to testify concerning the cause of  Dustin's death.  *See id.*  Dr. Nolte has not been retained by Plaintiffs.  *See id.*

Defendant moves for summary judgment on the grounds that Plaintiffs cannot prove either the second or third elements of their claim.  If Defendant is successful in demonstrating a failure of proof as to either element, summary judgment should be granted.  *See Blauwkamp*, 836 P.2d at 1252; *Medlock*, 608 F.3d at 1189 ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).  .

With regard to the standard of care and its alleged breach, Defendant argues that Plaintiffs' expert has not identified any specific fall prevention measure which should

have been in place for Dustin.  *See Doc. 84* at 11.  Defendant also points out that Plaintiff's expert has not offered any criticism regarding the manner in which Dustin was positioned on the night of his death.  *See id.* at 12.  With regard to causation, Defendant maintains that Plaintiffs' experts are unable to opine that any specific fall prevention measure would have prevented Dustin's fall or subsequent asphyxiation.  *See id.* at 11, 15-16.  Moreover, lacking any evidence of what caused Dustin's fall, Plaintiffs are unable, according to Defendant, to prove causation; that is, they are "necessarily unable to establish what medical consequences would have flowed from the event that caused the Decedent's exit from bed, and whether those consequences would have been the same regardless of whether he fell or not."  *Id.* at 15.

A.    **Standard of Care**

The Court agrees that "Grants Good Samaritan Center staff had a duty to respond to Dustin's multiple falls from his bed by analyzing and determining the cause of those falls, and based upon that analysis, to put appropriate measures in place to ensure Dustin's safety."  *Doc. 96* at 8.  It is Plaintiffs' position that they need not identify a specific fall prevention measure or measures that should have been adopted in Dustin's case.  *See Doc. 96* at 4.

> The applicable standard of care as stated by Ms. Verity does not mandate the specific measure or measures be taken in response to a resident's fall in each specific circumstance.  It does, however, require that the measures implemented be based on an analysis of the resident's fall, be appropriate to the circumstances, and be designed to avoid the risk of future falls or injury.

*Doc. 96* at 8.  According to Plaintiffs, it is the "lack of *any* response to these falls" that constitutes the breach of the standard of care in this case.  *See id.* (emphasis added).

Defendant contends that more is required to establish a breach of the standard of care.  Given the testimony of Plaintiffs' expert and the relevant law, the Court agrees. Several courts have noted that the decision whether to restrain a patient is a complex determination.  *See, e.g., Treaster v. HealthSouth Corp.*, 442 F. Supp.2d 1171, 1181 ("the majority of jurisdictions considering the question of whether restraining a patient is, in fact, a technical medical decision have concluded that it is a complex determination, and therefore expert testimony is required to educate the jury as to the appropriate standard of care" (citing *Banfi v. Am. Hosp. for Rehab.*, 529 S.E.2d 600, 606-607 (W. Va. 2000) (collecting cases)).  Such a complex determination requires weighing a modality's potential fall prevention benefit against other potential risks posed in implementing that measure.  *See id.*

While Plaintiffs are correct that Nurse Verity identifies at least four fall prevention measures that could possibly have been appropriate for Dustin, Nurse Verity declines to identify which, if any, of these measures Defendant should have employed.

> Q. Would you agree with me that neither of your reports identifies any specific available option for falls management?
> A. I'm evaluating the standard of care.
> Q. That's not my question.
> A. I wasn't intending to—to provide possible interventions after the fact.  I was intending to evaluate what they did.
> Q. Okay.  And so is it true that neither Exhibit 17 or 18 identifies any specific intervention or option for falls management?
> A. It identifies that they didn't—they didn't offer up any interventions for falls management.  I mean—
> Q. Can you answer my question?
> A. They did nothing.
> Q. Can you answer my question?
> A. No.  I wasn't intending to provide options for them after the fact.
> Q. And you didn't?

A. And I didn't.

Q. Okay.  You have not disclosed any options that identified any interventions that Good Samaritan should have instituted at any specific time, correct?

A. No.    My opinion was that they have to produce something.

*Doc. 105-1* at 4.

Nurse Verity testified that she did not "specifically analyze" whether side rails would have been an appropriate measure for Dustin's care.  *See Doc. 105-1* at 5. According to Nurse Verity, a specific analysis is required because while side rails may have been appropriate for one patient, they may not be an appropriate modality for another.  *See id.*  Beyond side rails, Nurse Verity acknowledges that all of the fall prevention options she addressed in her deposition in this case posed potential risks of their own.  *See Doc. 106-1* at 2-8; *Doc. 84-1* at 17 (acknowledging that modalities such as side rails, a larger bed, and trunk wedges carry a potential risk of asphyxiation).

It is clear that each of the available fall prevention techniques required an evaluation of its risks to the individual patient given their specific circumstance.  A jury requires the assistance of a medical expert to assist in identifying and determining which, if any, modalities would have been appropriate for Dustin's care.  Absent such testimony, Plaintiffs cannot demonstrate that Defendant's failure to employ any or all of the existing fall prevention techniques constitutes a breach of the standard of care. Summary judgment is therefore appropriate in Defendant's favor as to Plaintiff's claim that Defendant negligently failed to follow proper precautions for patients at risk for falls.

Plaintiffs also contend that Defendants breached the standard of care by improperly positioning Dustin in his bed.  *See Doc. 96* at 12 ("The evidence, while circumstantial, is nearly conclusive that  Dustin's fall itself was the immediate result of

involuntary body movement, improper positioning in his bed, or a combination of these factors."). However, Plaintiffs' standard-of-care expert offered no such criticism. *See Doc. 84* at 6, ¶ 23; Doc. 97-1 (offering no dispute that Nurse Verity "has no criticisms of how Decedent was positioned in his bed and no reason to believe that he was not properly positioned in his bed on the night of his death").

Similar to fall prevention, the Court finds that appropriate positioning of a quadriplegic patient is a subject that requires medical and/or technical expertise and, therefore, expert testimony. *C.f. Smith v. Hrynkiw*, 2008 WL 8700457 at *10 (N.D.Ala. Apr. 28, 2008) (finding that "[p]laintiffs have demonstrated a sufficient level of reliability and helpfulness to the jury" in calling a nurse to testify concerning the proper positioning of anesthetized patients in surgery). Given the lack of any qualified evidence as to improper positioning, the Court will grant Defendant's Motion and bar Plaintiffs' claims to the extent they are based upon the improper positioning of Dustin in his bed

**B.   Plaintiffs Lack Sufficient Evidence to Support Causation.**

Although Plaintiffs' expert, Nurse Verity, does not identify any specific fall prevention measure that should have been in place, Plaintiffs contend that she "does identify a number of available measures that would have been effective to either prevent Dustin from falling from his bed, or to alert staff in the event of a fall." *Doc. 96* at 4. In support of this contention, Plaintiffs offer a supplemental affidavit from Nurse Verity; however, the Court previously struck that affidavit from the record as inconsistent with her deposition testimony. *See Doc. 96* at 5 (citing "Verity Affidavit at ¶ 8"); *Doc. 119* (striking the cited portion of ¶ 8 on the grounds that it conflicted with Nurse Verity's earlier deposition testimony

The remaining evidence in the record demonstrates that Nurse Verity cannot say that any specific intervention would have prevented Dustin's fall or asphyxiation on October 9, 2011. Indeed, Nurse Verity's deposition testimony is as follows:

> Q. And you cannot say that any specific intervention would have prevented Dustin's fall or asphyxiation on that date, correct?
> A. No.

*Doc. 84-1* at 18. Elsewhere in her deposition, Nurse Verity agreed with Defendant's attorney that she "[did]n't know what result there would have been with a particular kind of intervention and how it would have gone." *Doc. 106-1* at 2. She testified she did not know whether side rails, if Defendant had employed them, would have been effective to prevent the fall on October 9, 2011. *See id.* at 3. Likewise, Nurse Verity testified that she could not say whether a larger bed would have kept Dustin safe from falls and/or asphyxiation and acknowledged that a larger bed may have posed a potential risk of asphyxiation in and of itself. *See id.* at 7. Similarly, Nurse Verity agreed that the use of a trunk wedge or bolster also posed, in and of itself, a risk of asphyxiation. *See id.* at 8.

Plaintiffs nonetheless contend that a jury could reasonably reach a conclusion that their own expert could not.

> [T]he causation issue involves a determination as to whether or not Dustin would have suffered his fall in October 2011, or would have died as a result of the fall, had Grants Good Samaritan Center staff had appropriate available measures in place to protect him from falls from his bed, or to alert staff in the event of a fall. Determination of this issue does not entail any special medical or technical expertise, and a lay jury will be fully capable of making an informed determination of this issue, without the necessity of expert testimony.

*Doc. 96* at 15.

Just this morning, Plaintiffs filed a "Notice of Supplemental Authority" for this proposition and bring to the Court's attention the Second Circuit's 1999 decision in *Liriano v. Hobart Corp.*, 170 F.3d 264, 271.  The authority is neither new nor binding, and Plaintiffs fail to explain why they could not have cited the authority in their previous briefing.  Having reviewed the authority, however, I find it distinguishable to the circumstances presented here, and therefore need not ask Defendant for a response.

*Liriano* is a products liability case brought under New York law based on a failure- to-warn theory of liability.  The *Lirano* court found that no expert testimony was required as to causation in the absence of a warning that significant physical injuries could result when using a meat grinding machine without a safety guard.  *Liriano* held that "where a defendant's negligence significantly increased the chances of an injury and that very injury occurred, there was (in the absence of any other explanation) enough evidence of causation-in-fact to allow a jury to find such causation."  *Williams v. Utica College*, 453 F.3d 112, 120 (2nd Cir. 2006) (clarifying the holding in *Liriano*).

As discussed above, in this medical malpractice case, Plaintiffs have not come forth with expert opinion evidence of that Defendant violated the standard of care.  Because they have not identified exactly what Defendant did or failed to do that was improper, they cannot say that Dustin's death was an expected consequence of negligence.  In fact, had Defendant implemented procedures identified by Plaintiffs, Dustin may have died sooner and as a result of the very fall prevention method or restraint to which Plaintiffs now cite.  Another case cited as supplemental authority, *BCS Servs, Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011), involves a RICO action

completely divorced from the medical standard of care inquiry and complex causation factors at issue in this case.

Thus, the Court finds that for the same reasons an expert opinion is required to identify which, if any, fall prevention techniques would have been appropriate or required by the standard of care in the individual case, an expert opinion is also required to establish whether any such technique would, to a reasonable degree of medical certainty, have prevented the fall and/or ultimate death from asphyxiation that occurred in this case.

## III.   CONCLUSION

In order to prevail on their Motion for Summary Judgment *(Doc. 83)*, Defendant must show there is a lack of evidence on an essential element of Plaintiffs' medical malpractice claim.  *See Medlock*, 608 F.3d at 1189.  Based on the undisputed material facts, Plaintiffs have failed to produce evidence from which a reasonable juror could conclude by a preponderance of the evidence that either a breach of the applicable standard of care or that any alleged breach proximately caused Dustin's death.  Consequently, summary judgment will be entered in favor of Defendants.

Wherefore**,**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Breach of Duty and Causation *(Doc. 83)* is **granted**.  Final judgment will be entered for Defendant and the Amended Complaint is dismissed with prejudice in its entirety.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent